IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LISA ANN FRILOUX**                                                                                          **PLAINTIFF**

**VERSUS**                                                            **CIVIL ACTION NO. 1:15cv200-RHW**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security**                                                              **DEFENDANT**

## MEMORANDUM OPINION

Through counsel, Plaintiff Lisa Ann Friloux filed this action June 30, 2015, seeking judicial review under 42 U.S.C. § 405(g) and § 1383(c)(3) of the denial of Friloux's claims for Social Security disability and Supplemental Security Income benefits.[1] Friloux asserts the decision is "legally incorrect" and unsupported by substantial evidence. Specifically, Friloux challenges as unsupported by substantial evidence the Administrative Law Judge's (ALJ) findings on Friloux's residual functional capacity (RFC), credibility and the Step 5 determination that Friloux can do other work. [13], [14, p. 3] The parties consented to the exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73 and the case was reassigned to the undersigned for all further proceedings. [11], [12]

### Facts and Procedural History

On March 28, 2012, Friloux filed applications for Social Security disability benefits and supplemental security income, alleging she had been disabled since June 30, 2011, at age 50.[2] [10, p. 76] Friloux alleged disability due to diabetes, hypertension, sleep apnea, depression, anxiety, arthritis, obesity, a 2011 assault, premenstrual dysphoric disorder, and painful cycles and menses. [10, pp. 76-7, 89-90, 102-03, 195-204] The Commissioner denied the applications

---

[1] Friloux has been represented by counsel since September 4, 2012. [10, p. 138-39]

[2] Friloux's 2010 claim for benefits was denied at the initial level on February 12, 2011.

initially on August 3, 2012, and on reconsideration on September 12, 2012. [10, pp. 102-03, 122-23] At Friloux's request, Administrative Law Judge Sarah DiMaggio Wallis conducted a hearing on November 12, 2013, at which Friloux and Vocational Expert Charles G. Miller testified. [10, pp. 50-73] By the time of the hearing Friloux was 53 years old, unmarried, and lived alone. She has a bachelor's degree in nursing, but testified that since 2009, she has worked only a couple of days (in 2012), and done some volunteer work at Bethel Free Clinic. Friloux testified she cannot work full time because she is "undependable;" she cannot eat correctly or follow a diet correctly, which leads to headache, nausea, irritability and hostility, and she is always in pain. She thinks her blood sugar is in control, but her blood pressure is bad. Rest, medication, and heat on affected joints[3] alleviates her symptoms, though she sometimes chooses not to take her medications when she wants to drive herself somewhere. [10, p. 56-60]

     Asked how much weight she could lift, Friloux responded "whatever," stating that she is strong but pays for it. She estimated she can stand for ten minutes, and sit for 45 minutes, and stated she lies down three or four times a day for ten minutes or so. She has shortness of breath with exertion, anxiety or pain. A 2002 EKG was "typical" for her age. She sleeps with a CPAP machine, sometimes sleeping only four hours a night. [10, pp. 60, 64-65] She prefers to be alone, and testified her memory is not as good as it used to be, that she has difficulty concentrating and finishing things. She stated she has had several head injuries, including a motor vehicle accident and being hit in the eye. [10, pp. 61, 65] Friloux stated she had tried to see the doctor for blood pressure and chest pain on the day of the hearing, but a nurse practitioner with whom she had problems came in instead, and she did not have time to go by the emergency room. Friloux declined the ALJ's offer to suspend the hearing or call an ambulance

---

[3] She has pain in her left thigh, hip, back, her knee sometimes goes out and she falls, and shoulder pain due to a fall out of a chair or perhaps from lifting a child. [10, pp. 65-66]

for her, stating, "If I pass out, then you'll know to call the ambulance." [10, p. 63]  Friloux testified she does not want surgery and does not like hospitals. [10, p. 65]  She claims painful menstrual cycles disable her two weeks monthly.[4]  [10, p. 66]  Friloux testified she lives alone, and attends to her own personal care without assistance.[5]  She cooks, does laundry, shopping, household chores, cleaning, and takes out the trash.  She indicated in other reports that she drives, mows her own yard, and goes out to eat and sightsee when her mother visits.  She also uses Facebook, listens to the radio, reads and sings in a church choir.   [10, pp. 61-62, 256]  She told a psychological examiner she had last worked around October 2011 for a temporary agency as a substitute school teacher and nurse.  Her earnings statement indicates she earned just over $1,000 that year. [10, pp. 622, 206]

      Vocational Expert (VE) Charles T. Miller testified Friloux's work history consists of working as a nurse from 1982-2012, which is deemed medium, skilled work.  In response to a hypothetical posed by the ALJ, considering one of Friloux's age, education and work history, who can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently; who can stand/walk six hours in an eight-hour work day; sit six hours in an eight-hour work day; occasionally climb ramps and stairs, but never ropes, ladders or scaffolds; occasionally stoop, kneel, crouch and crawl; who must avoid unprotected heights, hazardous machinery and temperature extremes; can understand and carry out simple tasks and some detailed or complex tasks and job instructions; can sustain concentration and persistence a minimum two hour period, occasionally interact with supervisors, co-workers and the public, and respond appropriately to

---

[4]In several medical records dated from 2009 until October 2010, Friloux indicated her last menstrual period was June 1, 2009 [10, pp.  340, 338, 335, 331, 333, 493, 495, 498, 500, 513], though an October 8, 2010 record indicates she was "on her cycle." [10, p.  383]

[5]Her various conditions do not affect her ability to care for her personal needs.  [10, pp.  271, 278]

infrequent changes in the work place, Miller testified Friloux cannot do her past work. He testified Friloux has transferrable skills in her ability to keep records and deal with individuals, and that she can do sedentary work as a receptionist (skilled), an answering service clerk (semiskilled) or cashier/sales clerk at a gas station (unskilled), and there are such jobs available in significant numbers in the economy. [10, p. 68-70]

On January 22, 2014, ALJ Wallis issued her thirteen-page decision finding Friloux has not been under a disability as defined in the Social Security Act from June 30, 2011 through the date of the decision. [10, pp. 31-43] On April 26, 2015, the Appeals Council denied review of that decision [10, pp. 6-9], and Friloux filed the action now before the Court.

## Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995));

*Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  Factual findings supported by substantial record evidence are conclusive and must be upheld.  *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984).  Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision [*Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)]; the Commissioner's decision is accorded great deference and "will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

<u>Analysis</u>

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..."  42 U.S.C.A. § 423(d)(1)(A).  As the one claiming disability, Friloux had the burden to prove a disability which precluded her from engaging in substantial gainful work during the pendency of her applications for benefits.  *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir.

1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [she] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Wallis applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i-v).  Step one requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit.  Judge Wallis found Friloux had not engaged in such activity since June 30, 2011.  At step two the ALJ determines whether claimant has a medically determinable impairment or combination of impairments which meets the duration requirement and is severe, *i.e.*, which significantly limits her ability to perform basic work activities.  ALJ Wallis found Friloux has severe impairments of obesity, diabetes mellitus, hypertension, left knee osteoarthritis, depression and anxiety.  The ALJ found Friloux's other claimed impairments – sleep apnea, multiple joint pain, a heart condition and breathing difficulties – are non-severe due to a lack of record evidence that they had lasted uncontrolled for 12 months or longer and have caused more than minimal limitations to her ability to perform basic work activities, but those impairments were considered by the ALJ in assessing Friloux's residual functional capacity (RFC).

Step three requires determination of whether the claimant's impairment or combination of impairments is of such severity that it meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Unless the impairment or combination of impairments is of such severity and meets the duration requirement, the analysis continues to step four.  The ALJ found Friloux does not have an impairment or combination of impairments that meets or medically equals a listed impairment: her hypertension has not resulted in chronic

heart failure or ischemic heart disease;[6] her diabetes mellitis is well-managed and has caused no impairment of the severity of a listing; no record evidence indicates Friloux's obesity (Friloux is 5'4" and weighs 220 pounds)[7] aggravates her other impairments to the level of severity of a listing;[8] and her affective disorders and personality disorders do not produce listing-level symptoms. With respect to the last two impairments, the record evidence shows Friloux has no marked restriction in daily living activities, social functioning, maintaining concentration, persistence and pace, nor any repeated episodes of decompensation of extended duration. She has only mild restriction or difficulties in daily living activities, concentration, persistence or pace and moderate difficulties in social functioning. No record evidence indicates she has had episodes of decompensation, *i.e.*, "exacerbations or temporary increases in symptoms or signs accompanied by loss of adaptive functioning." [10, pp. 34-36] The Court finds the ALJ's citations to the record evidence upon which these findings are based demonstrate substantial record evidence supporting these factual findings.

At the fourth step of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity, *i.e.*, her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, and (2) whether she has the residual functional capacity to perform the requirements of her past relevant work. If claimant can perform the requirements of her past relevant work, she is not disabled. Based on the record evidence, including the testimony of the VE, the ALJ found Friloux could not return to her prior work.

---

[6] Numerous medical records indicate Friloux's blood pressure was controlled with medication. [10, pp. 496,499, 501,507, 509, 512, 515, 519, 521, 527, 529, 533, 543, 545]

[7] Friloux actually weighed more while she was still working full-time in 2007. [10, pp. 206, 211] Records show she weighed 240-41 pounds in July and August of that year. [10, pp. 295, 306]

[8] There are no listing criteria specific to evaluating obesity.

Considering the entire record, the ALJ concluded that Friloux retained the residual functional capacity to lift, carry, push and pull up to twenty pounds occasionally and ten pounds frequently; to stand/walk six hours in an eight hour work day and sit a like period of time; to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; but never to climb ladders, ropes or scaffolds; she must avoid temperature extremes, unprotected heights and hazardous machinery.  She can understand, remember and carry out simple and some complex (up to four-step) tasks and job instructions; can sustain concentration and persistence for minimum two-hour periods; can have occasional interaction with supervisors, co-workers and the public and can respond appropriately to infrequent basic changes in the workplace.  These are the limitations which were incorporated into the hypothetical posed to VE Miller.  The ALJ's findings are actually more restrictive than some examiners opined.  Some doctors/examiners found she could lift/carry up to fifty pounds occasionally and twenty-five pounds frequently, and had no established postural, manipulative, visual, communicative or environmental limitations. [10, pp. 481-488, 632], and that she could frequently climb stairs and ramps, crouch and stoop, rather than only occasionally doing those things as the ALJ found.  [10, pp. 82-84]

In making the finding regarding Friloux's RFC, the ALJ carefully evaluated the record evidence, identifying and explaining her reasons for the weight given to particular evidence. ALJ Wallis found the objective findings in the case "fail to provide strong support" for Friloux's allegations of disabling symptoms and limitations, noted that many of the problems for which Friloux sought care were quickly resolved or controlled with medication, and her "presentations at physical exams were fairly normal."  The ALJ specifically identified several 2012-2013 medical records supporting these findings. [10, p. 37-38]  In short, Friloux's medical complaints were frequently unsubstantiated by objective medical tests or findings.

At Step five, based upon all the record evidence including the testimony of VE Miller, medical records and physician's reports, Judge Wallis found Friloux capable of doing the available jobs identified by Miller, *i.e.*, receptionist, answering service clerk, or cashier/sales clerk at a gas station. The ALJ therefore held Friloux was not disabled under the Act.

Friloux complains the ALJ did not give proper weight to Dr. Scurfield's November 2013 opinion that Friloux's psychological symptoms and other limitations render her incapable of completing a normal workday and work week.  ALJ Wallis noted Dr. Scurfield completed his assessment after only two visits with Friloux, as stated on the assessment. [10, p. 757] Also, Dr. Scurfield reported Friloux's global assessment of functioning (GAF) score was 55, which is inconsistent both with the extreme restrictions he found and with other record evidence.[9]  It is for the ALJ to determine credibility of both lay and expert witnesses.  *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  In determining the weight to be given to opinion evidence, the ALJ considers factors such as the length of the treatment relationship, the frequency of examination,[10] the existence of relevant evidence/explanation supporting the opinion and the consistency of the opinion with the record as a whole.  The ALJ thoroughly examined the record evidence and considered the above factors, as demonstrated by the fact that she devoted two full pages of her single-spaced decision to discussing Friloux's mental impairments, numerous examinations and resulting reports. [10, pp. 39-41]  Friloux had no history of inpatient mental health treatment, no phobia, psychosis or evidence of PTSD, had received only medication for claimed mental impairments, and she was non-compliant with treatment, discontinuing medication when she

---

[9] A GAF score of 51-60 is indicative of *moderate* symptoms or difficulty in social, occupational or school functioning.  The assessment notes Friloux's highest GAF for the past several years was 55 "by patient self-report." [10, p. 756]  Other medical records show a GAF of 58 in December 2009. [10, p. 458]

[10] Dr. Scurfield had seen Friloux only twice, on October 3, 2016 and November 6, 2016, and his records consist of the five-page November 6, 2013 checklist assessment. [10, pp. 756-760]

chose to do so.[11]  [10, pp. 80-81, 94, 456, 460]  The Court finds ALJ Wallis fairly and accurately summarized the evidence, and substantial evidence supports her conclusion that Dr. Scurfield's findings were inconsistent with the reports of other medical providers, and with Friloux's own statements and activities: she did not feel impaired, was not depressed, felt unable to work due primarily to physical limitations, and reported she was working and/or seeking work; she lives alone and requires no assistance managing her own financial affairs, personal needs, yard care, housekeeping, shopping, cooking, and goes out alone, socializes with friends and family.  [10, p. 80]  An ALJ may reject the opinion of any physician when the evidence as a whole supports a contrary conclusion. See *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).  The Court finds substantial evidence supports the ALJ's decision to give little weight to Dr. Scurfield's opinion and accord greater weight to the opinions of other examiners.

Friloux next claims substantial evidence does not support the ALJ's finding Friloux's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible, stating the ALJ "failed to identify where in the record these inconsistencies occur."  In fact, the ALJ specifically pointed out Friloux's giving different stories to medical personnel about her left shoulder pain, first telling ER personnel on September 15, 2013 that she hurt her shoulder lifting a child [10, p. 744], later suggesting it might be related to an MRSA infection [10, p. 738], then reporting to another doctor that she hurt it falling out of a chair at home [10, p. 734].  However it happened, Friloux remained able to write with her left hand when she went to the ER, the X-ray of the shoulder showed no conclusive evidence of fracture or degenerative changes, and the problem was diagnosed as a strain.  Also, during the time she claimed she was incapable of working, Friloux testified she volunteered as a nurse, worked at an eye clinic, and

---

[11] A claimant must follow prescribed treatment in order to be found disabled.  *Johnson v. Sullivan*, 894 F.2d 683, 685 n. 4 (5th Cir. 1990).

sold supplements.  In reviewing the record, the Court noted that although Friloux testified in November 2013 that she was incapacitated by menstrual problems two weeks out of each month, her medical records repeatedly stated her last menstrual period was in 2009.  In addition, the inconsistencies between her alleged limitations and various daily activities are relevant to evaluation of credibility.  See *Reyes v. Sullivan*, 915 F.2s 151, 155 (5th Cir. 1990).  The Court reiterates that it does not re-weigh the evidence; issues of credibility and conflicts in the evidence are for the Commission to decide, not the Court.

      Finally, Friloux contends substantial evidence does not support the ALJ's finding that she could perform the jobs identified by the VE, apparently on grounds that the hypothetical posed to the expert was incomplete or defective.  However, since ALJ Wallis properly included in her hypothetical all the limitations she found credible from the record as a whole, the hypothetical question was complete.  See *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (ALJ is required to include in hypothetical only the limitations the ALJ recognizes).  It is also noteworthy that Friloux was represented by counsel at the hearing, and her attorney raised no objection to the hypothetical posed by the ALJ, nor did he ask any questions about the jobs identified by the VE.  His only question was based upon the restrictions found in Dr. Scurfield's assessment which the ALJ found entitled to little weight as previously discussed, and inconsistent with the record as a whole.  [10, p. 71]  The VE's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  Once the Commissioner met the burden of showing other work Friloux could do, it was incumbent on Friloux to prove she could not perform that work.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  She offered no such evidence and failed to meet her burden of proof under step five of the disability analysis.  The Court finds Friloux has not shown error in the ALJ's decision.

The Court finds the Commissioner's final decision is supported by substantial evidence, and in accord with relevant legal standards.  The decision is therefore affirmed.

SO ORDERED, this the 26th day of September, 2016.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE